# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| AYSHE H. TAYIP, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:09-cv-00643** |
| v. | ) | **Judge Wiseman / Knowles** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Record. Docket No. 6. Defendant has filed a Motion for Judgment on the Pleadings and supporting Memorandum of Law, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Nos. 15 and 16. Plaintiff has filed a Reply. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on January 22, 2004, alleging that she had been disabled since January 10, 2002, due to dizziness, pain in her head, shoulders, and arms, double vision, and depression.  *See, e.g.*, Docket No. 9, Attachment ("TR"), pp. 17, 74-77, 101-102.  Plaintiff's applications were denied both initially (TR 27-28, 31-32) and upon reconsideration (TR 29-30, 36-37).  Plaintiff subsequently requested (TR 38) and received (TR 43-46) a hearing.  Plaintiff's hearing was conducted on February 23, 2006, by Administrative Law Judge ("ALJ") Linda Gail Roberts.  TR 354-382.  Plaintiff and Vocational Expert, Gordon Doss, appeared and testified.  *Id.*

On February 2, 2007, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-22.  On March 30, 2007, Plaintiff timely filed a request for review of the hearing decision.  TR 10.  On August 7, 2007, the Appeals Council issued a letter declining to review the case.  TR 5-8.  A civil action was thereafter timely filed in the U.S. District Court for the Middle District of Tennessee, which had jurisdiction pursuant to 42 U.S.C. § 405(g).  TR 422.  The Court remanded the case with instructions for the ALJ to, (1) update the medical evidence; (2) further evaluate the medical source opinions in the record; (3) obtain evidence from a medical expert, if necessary; and (4) obtain additional testimony from a vocational expert, if necessary.  TR 420.  The Appeals Council issued an Order in accordance with the Court's remand.  TR 429-431.

On January 22, 2009, ALJ Linda Gail Roberts conducted Plaintiff's second hearing.  TR 468-492.  Plaintiff, Plaintiff's son, Bawer Tayip, and Vocational Expert Gail Ditmore appeared and testified.  *Id.*  An interpreter also participated in the hearing.  *Id.*  On February 17, 2009, the

ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the

meaning of the Social Security Act and Regulations. TR 392-394. Specifically, the ALJ made

the following findings of fact:

1. The claimant met the insured status requirements of title II of the Social Security Act on January 10, 2002, the alleged onset date, and continued to meet them through March 31, 2007, but not thereafter.

2. The claimant did not engage in substantial gainful activity during the relevant time period of January 10, 2002, the alleged onset date, through March 31, 2007, the date her insured status expired (20 CFR 404.1571 *et seq.*).

3. The evidence establishes that, during the relevant time period, the claimant had a severe combination of impairments that included benign positional vertigo, headaches, and depression (20 CFR 404.1521 *et seq.*).

4. During the relevant time period, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work with occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds, 2 hours of walking/standing during an 8-hour workday, 6 hours of sitting during an 8-hour workday, only occasional climbing of stairs or ramps but no climbing of ladders, ropes, or scaffolds, no working at heights, near dangerous machinery, or in other hazardous environments, the ability to understand, remember, and carry out with moderate difficulty, detailed instructions, the ability to, with moderate difficulty, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability, with moderate difficulty, to interact appropriately with co-workers, supervisors, and the general public, the ability to, with moderate difficulty,

3

to respond appropriately to changes in the work setting, and the ability, with moderate difficulty, to complete a normal workday/workweek without interruptions for psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

6.  During the relevant time period of January 10, 2002, through March 31, 2007, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was 36 years old in January 2002 and attained age 42 in March 2007, which is defined as a younger individual (20 CFR 404.1563).

8.  The claimant is not able to communicate effectively in English, and is considered as an individual who is illiterate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity during the relevant time period of January 10, 2002, through March 31, 2007, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time during the relevant period of January 10, 2002, the alleged onset date, through March 31, 2007, the date her insured status expired (20 CFR 404.1520(g)).

TR 397-406.

On February 23, 2009, Plaintiff timely filed exceptions to the ALJ's decision with the

Appeals Council.  TR 387-391.  On June 5, 2009, the Appeals Council issued a letter declining

4

to review the case (TR 383-386), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

6

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Case 3:09-cv-00643   Document 18   Filed 07/13/10   Page 7 of 22 PageID #: 89

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) not according sufficient weight to the opinion of otolaryngologist Dr. Mitchell Schwaber; (2) not considering the vocational report of Rebecca Williams; (3) evaluating Plaintiff's credibility; (4) not considering the testimony of Plaintiff's son, Bawer Tayip; and (5) relying on the testimony of Vocational Expert Gail Ditmore. Docket No. 7. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

8

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Opinion of Dr. Schwaber

Plaintiff argues that the ALJ erred in not according sufficient weight to the opinion of otolaryngologist Dr. Mitchell Schwaber. Docket No. 7. Specifically, Plaintiff argues that the ALJ should have found her disabled based on Dr. Schwaber's opinion that she had Class III vertigo. *Id.* Plaintiff also argues that the ALJ improperly relied on Dr. Schwaber's suspicions that Plaintiff was magnifying her symptoms to "discredit Dr. Schwaber's entire opinion," even though he was "the only doctor on record who really gave an opinion concerning [Plaintiff's] actual condition." *Id.*

Defendant responds that the ALJ properly considered Dr. Schwaber's opinion. Docket No. 16. Specifically, Defendant argues that the ALJ's decision not to find Plaintiff disabled based upon Dr. Schwaber's diagnosis of Class III vertigo was proper "because, among other things, Dr. Schwaber indicated that his assessment that Plaintiff had Class III vertigo was primarily based on Plaintiff's subjective complaints" (which he felt she might be magnifying). *Id.* Defendant further argues that "substantial evidence supports the ALJ's determination not to find Plaintiff disabled based on Dr. Schwaber's opinion." *Id.* Finally, Defendant argues that

9

even if the ALJ had fully credited Dr. Schwaber's opinion that Plaintiff suffered from Class III vertigo, Plaintiff has failed to explain how such an assessment would necessarily mean that she was disabled, given that Dr. Schwaber did not opine that that condition would preclude her from all work. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>     ...

10

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

Dr. Schwaber first examined Plaintiff on May 16, 2002.  TR 165.  He continued to examine and treat her through August 30, 2002.[2]  TR 166.  In August 2002, Dr. Schwaber diagnosed Plaintiff with a "severe vestibular impairment [*i.e.*, vertigo] at a Class III level."  TR 166, 296.  Dr. Schwaber noted that Plaintiff was "unable to walk or perform any but daily tasks – no driving."  TR 302.  Dr. Schwaber further explained that an individual with a Class III level of impairment could not perform activities of daily living without assistance, except for "simple activities" such as self-care.  TR 171.

Despite Plaintiff's argument to the contrary, the ALJ did not disregard Dr. Schwaber's entire opinion.  Rather, the ALJ acknowledged that Dr. Schwaber was a specialist who had "evaluated/treated" Plaintiff for her complaints, and she accorded "great weight" to the parts of his opinion she found to be consistent with, and supported by, the record.  TR 403.  For example, the ALJ accepted Dr. Schwaber's assessment that Plaintiff should not work in hazardous environments.  TR 404.  The ALJ also accepted Dr. Schwaber's restrictions on heights and machinery.  *Id.*  The ALJ noted that Dr. Schwaber's restrictions regarding hazardous environments, heights, and machinery were consistent with those of the consultative examining physician, the reviewing State Agency medical consultant, the consultative physician, and Dr. Strickland.  *Id.*

After according great weight to the parts of Dr. Schwaber's opinion she found supported by the evidence, the ALJ did not fully credit two parts of Dr. Schwaber's opinion because she found them inconsistent with, and unsupported by, the record.  TR 404-405.  First, the ALJ

---

[2]Dr. Schwaber then examined Plaintiff again on June 24, 2003.  TR 264.

11

accorded "little weight" to Dr. Schwaber's opinion that Plaintiff could sit for only three hours at a time during an eight-hour workday.[3] TR 168, 300, 404.  The ALJ accorded little weight to this opinion because: (1) Dr. Schwaber provided no basis or  explanation for why Plaintiff's vertigo would limit her to three hours of sitting at a time out of an eight-hour workday; (2) Drs. Strickland and Clenendin did not place restrictions on Plaintiff's ability to sit; (3) Dr. Thurman and the State Agency medical consultant opined that Plaintiff could sit for six hours in an eight-hour workday; and (4) the examining consultative physician opined that Plaintiff could sit for eight hours in an eight-hour workday.[4] TR 404.

The ALJ also rejected Dr. Schwaber's opinion that Plaintiff could perform no postural activities, including climbing, balancing, stooping, kneeling, crouching, crawling, and twisting. TR 300, 404-405.  In rejecting this opinion, the ALJ reasoned that postural activities such as kneeling, crawling, etc. would not be likely to result in danger to Plaintiff if she became dizzy, whereas climbing ladders, scaffolds, etc. would be more likely to involve being at heights and would result in a greater chance of injury if Plaintiff became dizzy. TR 404-405.  The ALJ also noted that Dr. Schwaber's opinion that Plaintiff could perform no postural activities conflicted with the opinions of the State Agency medical consultant and neurologist Dr. W. Garrison Strickland, who opined that Plaintiff should not work in hazardous environments or at heights,

_____

[3]In a functional capacity assessment of Plaintiff, Dr. Schwaber indicated that Plaintiff was capable of sitting for less than a total of three hours out of an eight-hour workday.  TR 300. In his deposition, Dr. Schwaber clarified that he meant that Plaintiff was capable of sitting for about three hours at a time out of an eight-hour workday, not a total of three hours out of an eight-hour workday.  TR 168.

[4]With regard to Plaintiff's ability to sit, the ALJ explicitly noted that she had considered Dr. Schwaber's opinion in deciding to accord greater weight to the opinions of Dr. Thurman and the State Agency medical consultant.

but who did not otherwise posturally limit her. *Id. See also*, TR 234-237, 271. Because postural activities such as kneeling, crawling, etc. would not be likely to result in danger to Plaintiff if she became dizzy, the ALJ accorded greater weight on this issue to the opinions of Dr. Strickland and the State Agency medical consultant. *Id.*

Dr. Schwaber examined and treated Plaintiff several times over a continuous period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions. As the Regulations state, however, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As has been discussed, Dr. Schwaber's opinions sometimes conflicted with those of other physicians. The ALJ properly accorded great weight to the parts of Dr. Schwaber's opinion that were consistent with, and supported by, the evidence of record. The ALJ properly discounted the parts of Dr. Schwaber's opinion that contradicted other substantial evidence on the record. The Regulations do not mandate that the ALJ accord the entirety of Dr. Schwaber's opinion controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Consideration of the Vocational Report of Rebecca Williams

Plaintiff argues that the ALJ erred in not considering the vocational report of Rebecca Williams, a vocational consultant hired by Plaintiff, in determining Plaintiff's disability. Docket No. 7. Specifically, Plaintiff argues that the ALJ disregarded Ms. Williams' report in

13

contravention of SSR 06-3p, which permits the consideration of evidence from "other sources" as defined in 20 CFR 404.1513(d) and 416.913(d) to show the severity of an individual's impairments and how it affects the individual's ability to function. *Id.*

Defendant responds that the ALJ was not required to consider Ms. Williams' report because SSR 06-3p applies only to opinions that provide insight into the severity of an impairment and how it affects an individual's ability to function, and Plaintiff failed to explain how Ms. Williams' evaluation offers such insights. Docket No. 16. Defendant also contends that Ms. Williams was providing a "vocational evaluation" regarding Plaintiff's transferable job skills, not a report on the severity of her impairments. *Id.*, *citing* TR 84-90. Defendant further argues that Ms. Williams' report was irrelevant to the ALJ's decision because it was based on limitations that the ALJ rejected. *Id.*

On the issue of opinions from non-medical sources, SSR 06-3p states that "the adjudicator generally should explain the weight given to opinions from these other sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR No. 06-3p (Cum. Ed. 2006). While Plaintiff is correct that the ALJ did not explain the weight she accorded to Ms. Williams' report (*see* TR 395-407), the ALJ's discussion of Dr. Schwaber's opinion makes clear her reasoning for not incorporating Ms. Williams' report into her decision. As previously discussed, the ALJ rejected some of the limitations that Dr. Schwaber placed on Plaintiff's activity. TR 404-405. Ms. Williams opined that, "[a]ccording to the limitations set forth by Dr. Schwaber . . . [Plaintiff] is 100 % vocationally disabled." TR 89. Since the ALJ did not accept all of the limitations set forth by Dr. Schwaber, the ALJ did not credit the opinion of Ms. Williams, which was based on

14

those limitations.  An ALJ need not accept the opinion of a vocational consultant who relied on limitations the ALJ rejected.  *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Because Ms. Williams' opinion was based upon limitations the ALJ rejected, the ALJ was not bound to accept her vocational evaluation.  Accordingly, Plaintiff's argument fails.

**3. Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony.  Docket No. 7. Specifically, Plaintiff argues that, although the ALJ "seems to think [Plaintiff] exaggerated her condition in order to receive a Worker's Compensation settlement, . . . there is no doubt whatsoever that she suffered an injury on the job."  *Id.*  Plaintiff further argues that Plaintiff did not complain much to her physicians about dizziness because she "has been dealing with this dizziness and the other outcomes of her accident for the past seven years and has obtained no relief," and because she is limited in her ability to communicate in English.  *Id.*

Defendant responds that the ALJ properly evaluated the credibility of Plaintiff's testimony.  Docket No. 16.  With regard to Plaintiff's first point, Defendant argues that the ALJ explicitly accepted that Plaintiff suffered an injury on the job.  *Id.*  With regard to Plaintiff's second point, Defendant argues that Plaintiff's contention that she did not complain of dizziness because of her alleged inability to communicate in English is unsupported because the record reflects that Plaintiff relied on her husband or other individuals to translate for her during her doctor appointments.  *Id.*

Defendant correctly notes that, contrary to Plaintiff's assertion, "the ALJ accepted that Plaintiff experienced a workplace injury in 2002."  *Id.*  Specifically, the ALJ stated, "[t]he medical evidence shows that, [on] January 10, 2002, her alleged onset date, the claimant had

15

several boxes fall on her." TR 398. Because the ALJ explicitly acknowledged Plaintiff's on the job injury, and Plaintiff has failed to demonstrate that the ALJ's credibility determination was somehow flawed because she failed to accept the severity of Plaintiff's impairments, Plaintiff's argument on this point fails.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain and other symptoms:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other

16

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(3)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

At her February 23, 2006 hearing, Plaintiff testified that she would become dizzy after doing a little vacuuming; that crowds and noise made her tired; that she was able to stand for ten to fifteen minutes at a time, sit for thirty to forty minutes at a time, and walk for fifteen to twenty minutes at a time; and that she did not know if she was able to lift five pounds. TR 366, 368, 369. At her January 22, 2009 hearing, Plaintiff testified that she was always dizzy and experienced headaches; and that she was able to stand for about fifteen to twenty minutes at a time, sit for ten to fifteen minutes at a time, and walk for twenty minutes at a time. TR 477, 479.


Despite Plaintiff's testimony, the ALJ found that "the claimant has not experienced any pain or other symptomology of a disabling level of severity on an ongoing basis." TR 403. In finding that Plaintiff's symptoms were not severe enough to be disabling, the ALJ relied on various factors set forth in the Regulations, including Plaintiff's daily activities; the type, dosage and effect of medication; and other treatment or measures to relieve pain. TR 403; *see* 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ noted that Plaintiff was able to conduct activities such as vacuuming for short periods of time, washing dishes, going shopping with her husband, cleaning the kitchen floor while sitting down on the floor, preparing food, and occasionally doing laundry.

17

TR 88, 113, 114, 122, 403, 481, 482. The ALJ also noted that Plaintiff had delayed following Dr. Strickland's recommendation that she undergo vestibular rehabilitation and had missed appointments for testing, and that Dr. Schwaber believed the medications her prescribed her for dizziness were helping, since she refilled them. TR 167, 295, 306-307, 403. The ALJ also noted that at subsequent follow-up examinations, Plaintiff reported that she did not take medication for dizziness on an ongoing basis and that she used only nonprescription medication such as Tylenol for pain. TR 403. The ALJ further noted that Plaintiff infrequently voiced her complaints about the frequency and severity of her symptoms to her treating physician. *Id.* Plaintiff argues that Plaintiff voiced such complaints infrequently because of her inability to communicate in English. Docket No. 7. The record reflects, however, that her husband acted as an interpreter for her at various appointments. *See, e.g.*, TR 234, 236, 241.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the

18

reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that "the claimant has not experienced any pain or other symptomology of a disabling level of severity on an ongoing basis." TR 403. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Consideration of the Testimony of Bawer Tayip

Plaintiff argues that the ALJ showed a "total disregard" for the testimony of Plaintiff's son, Bawer Tayip. Docket No. 7. Specifically, Plaintiff argues that the ALJ violated SSR 06-3p by not considering Mr. Tayip's testimony that Plaintiff required frequent and long breaks from housework because of her dizziness. *Id.*

Defendant argues that it was not necessary for the ALJ to discuss Mr. Tayip's testimony regarding Plaintiff's need for frequent and long breaks, because the ALJ discussed the Plaintiff's own testimony about her need for such breaks. Docket No. 16. Thus, Defendant argues, the ALJ's discussion of Mr. Tayip's testimony about Plaintiff's need for breaks would not have changed the outcome. *Id.*

Plaintiff is correct that the ALJ did not specifically mention Mr. Tayip's testimony that his mother had to take frequent and long breaks from attempting housework because of dizzy spells. *See* TR 395-407. Contrary to Plaintiff's assertion, however, this does not violate SSR 06-3p. On the issue of opinions from non-medical sources, as previously noted, SSR 06-3p states that "the adjudicator generally should explain the weight given to opinions from these

19

other sources, or *otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case*." SSR No. 06-3p (Cum. Ed. 2006)(Emphasis added). Although the ALJ did not explicitly discuss the testimony of Mr. Tayip, she did not have to do so because Mr. Tayip's testimony regarding his mother's dizziness and need for breaks is essentially a restatement of Plaintiff's own allegations of her symptoms, which the ALJ did discuss. *Compare* TR 481 *with* TR 491. Specifically, the ALJ discussed Plaintiff's reports that she required frequent and long breaks, that she needed rests from dizzy spells, which lasted between thirty to forty minutes, and that she frequently experienced dizziness and headaches. TR 402.

Because Mr. Tayip's testimony regarding Plaintiff's dizziness and need for breaks was essentially a restatement of her own testimony (which the ALJ found less than fully credible), it did not add any information to the case or have an effect on its outcome. The ALJ thoroughly discussed the evidence in a way allows the undersigned to follow her reasoning and the SSR does not require more. Accordingly, Plaintiff's argument fails.

## 5. Consideration of the Opinion of Vocational Expert Gail Ditmore

Plaintiff argues that the ALJ erred in relying on the testimony of Vocational Expert Gail Ditmore because the Dictionary of Occupational Titles (DOT) codes Ms. Ditmore listed for the jobs she testified would be appropriate for Plaintiff do not match the job descriptions she provided. Docket No. 7. Specifically, Plaintiff argues that Ms. Ditmore testified that Plaintiff could perform the positions of sedentary assembler, inspector, and packer, but the DOT codes she provided do not match those jobs. *Id.*

Defendant responds that "substantial evidence supports the ALJ's finding that Plaintiff

could perform other jobs in the local and national economies, and minor inconsistencies between vocational testimony and DOT information are an insufficient basis to reverse the decision of the ALJ." Docket No. 16.

In the instant case, Vocational Expert Gail Ditmore testified that, according to the ALJ's first hypothetical situation, Plaintiff was capable of performing the jobs of sedentary assembler, sedentary packer, and sedentary inspector. TR 485-486. Ms. Ditmore testified that there were 1,000 sedentary assembler jobs in Tennessee and 50,000 in the U.S., and that these jobs were available at Dell in Lebanon, Tennessee and at Bridgestone in LaVergne, Tennessee. TR 485, 488-489. Ms. Ditmore also testified that there were 500 sedentary packer jobs in Tennessee and 32,000 in the U.S., and that these jobs were available at the Distribution Center of Nashville in Nashville, Tennessee. TR 486, 488-489. Finally, Ms. Ditmore testified that there were 1,000 sedentary inspector jobs in Tennessee and 66,000 in the U.S., and that these jobs were available at General Motors in Spring Hill, Tennessee. TR 486, 488-489.

Plaintiff correctly notes, and Defendant concedes, that the DOT codes Ms. Ditmore provided for these jobs do not match the job descriptions she provided. Docket Nos. 7, 16. The jobs identified by Ms. Ditmore as available for Plaintiff, however, are actual positions. Ms. Ditmore simply recited incorrect codes for those position. Looking to the actual descriptions of the positions, Plaintiff has failed to allege, much less establish, that these positions are inconsistent with the ALJ's RFC finding. Because there is substantial evidence that Plaintiff could perform a significant number of identified jobs as described in the DOT (under their correct codes), Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

21

Judgment on the Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge